UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Erika Manker,                                    Case No. 17-cv-763-KMM
*o/b/o C.E.K., minor*,

            Plaintiff,

                                             **ORDER**

v.

Nancy A. Berryhill,
*Acting Commissioner of Social Security*,

            Defendant.

In this case, Erika Manker appeals the Commissioner of the Social Security Administration's ("SSA") denial of an application for disability benefits that she filed on behalf of her minor child, CEK. It is now before the Court on the parties' cross-motions for summary judgment. [Pl.'s Mot, ECF No. 18; Def.'s Mot., ECF No. 21.] Ms. Manker argues that the Commissioner's decision must be reversed because the Administrative Law Judge ("ALJ") misapplied the governing law in concluding that CEK is not disabled. She also argues that the ALJ's conclusion is not supported by substantial evidence. For the reasons that follow, Ms. Manker's motion is denied, the Commissioner's motion is granted, and this action is dismissed.

**I.    Background**[1]

On October 30, 2013, when CEK was five years old, Ms. Manker filed an application for supplemental security income on his behalf. CEK has several severe

---

[1]    The Administrative Record in this case is found at docket entry 14. Where the Court cites to specific pages in the Administrative Record, it does so using the abbreviation "AR."

1

impairments, including: an immune deficiency known as hypogammaglobinemia; asthma; celiac disease; esophageal esophagitis; food allergies; adjustment disorder; generalized anxiety disorder; posttraumatic stress disorder; and an overanxious disorder. CEK's immune disorder causes upper respiratory infections on a fairly regular basis and required the surgical implantation of a pump so that he could receive monthly infusions of medications. His celiac disease and food allergies require a very strict (and expensive) diet. Ms. Manker packs special meals for him to take to school and care must be taken to avoid contamination of his food with allergens. Despite his careful diet, he has experienced digestive problems including bowel issues and incontinence. CEK's mental impairments create challenges in the home. He has behaved violently toward his mother at times, refused to follow her instructions, thrown tantrums, and blamed himself for issues in the home. However, CEK is able to read and write at an above average level for his age, and his kindergarten teacher noticed no behavioral issues at school.

CEK's application for benefits was initially denied on January 9, 2014, and Ms. Manker requested reconsideration of that decision. On reconsideration, Dr. Milford Schwartz evaluated the medical records provided to determine whether any of CEK's impairments alone, or in combination, meets or medically equals the severity of listed impairments, or functionally equals a listing. *See* 20 C.F.R. § 416.924(d). For childhood disability cases, this required Dr. Schwartz to evaluate CEK's functioning across six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b). A child's "impairment(s) is of listing-level severity if [he] ha[s] 'marked' limitations in two of the domains . . . or an 'extreme'

limitation in one domain."[2] *Id.* § 416.926a(d). A child's impairment or combination of impairments must also meet "the duration requirement," *id.*, which means that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months," 20 C.F.R. § 416.909.

Dr. Schwartz found that CEK had marked limitations in two of the six domains—"caring for yourself" and "health and physical well-being." Despite finding marked limitations in these two domains, the reconsideration form indicates that CEK is "Not Disabled" in its "determination" section.[3] [AR 121.] On August 5, 2014,

---

[2]     The applicable regulations define a marked limitation as follows:

> A child-claimant has a "marked" limitation in a domain when her impairment(s) interferes seriously with [her] ability to independently initiate, sustain, or complete activities. [Her] day-to-day functioning may be seriously limited when [her] impairment(s) limits only one activity or when the interactive and cumulative effects of [her] impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."

20 C.F.R. § 416.926a(e)(2)(i).

[3]     The record does not indicate why the reconsideration form includes the "not disabled" determination where the medical consultant found marked limitations in two domains. The reconsideration form also includes the signature of Melissa Green, the Disability Adjudicator/Examiner, who attests that the entire reconsideration file was reviewed to determine the propriety of the proposed determination. [*See* AR 123.] In a case like this, disability determinations are made by a "State agency medical or psychological consultant and a State agency disability examiner," 20 C.F.R. § 416.1015(c)(1), but the record also reveals no clues as to the substance of any interaction between Ms. Green and Dr. Schwartz that may have led to the "not disabled" determination being selected intentionally. Ms. Manker posits that the "not disabled" determination was a mistake, but she "does not assert . . . that the Court should (or can) 'turn back the clock' on any of the administrative proceedings." [Pl.'s Mem. at 18, ECF No. 19; *see also id.* at 12 (describing the "erroneous selection of 'Not Disabled'" as "water under the bridge").]

the SSA sent Ms. Manker a notice indicating that CEK's application was denied at the reconsideration level. [AR 130-34.] Ms. Manker requested a hearing before an ALJ.

On August 6, 2015, ALJ Christel Ambuehl held a video hearing, and on January 28, 2016, she issued a written decision denying CEK's application based on the three-step sequential evaluation for childhood disability claims.[4] At the first two steps, the ALJ found that CEK had not engaged in substantial gainful activity and that he had the severe impairments identified above. At the third step, ALJ Ambuehl found that CEK does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments.[5] ALJ Ambuehl also evaluated

---

[4]   "To find an adult disabled, an ALJ normally engages in a five-step analysis." *Jones v. Barnhart*, 335 F.3d 697, 699 (8th Cir. 2003) (citing 20 C.F.R. § 404.1520(a)-(f) (2002); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987)). For childhood disability cases, only three steps are involved:

> [A]n ALJ must first determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b) (2000). If the child is not engaged in such activity, the ALJ must determine whether the child's impairment or combination of impairments is severe. 20 C.F.R. § 416.924(c) (2000). If the impairment is severe, the ALJ must then determine whether a child's impairments meet, medically equal, or functionally equal, a listed impairment set out in Appendix 1 of 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 416.924(d) (2000). In the event a child's impairments do not meet or medically equal a listed impairment, the ALJ must assess all functional limitations to decide whether they functionally amount to a listed impairment. 20 C.F.R. § 416.926(a) (2000). If the impairments do not meet, medically equal, or functionally equal a listed impairment, a child will not be found disabled. 20 C.F.R. § 416.926(d) (2000).

*Id.* at 698-99.

[5]   The ALJ's decision indicates that she considered the listings for respiratory disorders (Listing 103.00), digestive system (Listing 105.00), mental disorders (Listing 112.00), and immune system disorders (Listing 114.00).

the six domains governing functional equivalence. ALJ Ambuehl was ultimately "satisfied that the evidence does not reflect any full and continuous 12-month period wherein [CEK's] functioning fell below that identified throughout [her] decision." [AR 28.] Accordingly, she concluded that CEK did not demonstrate functional equivalence and was not disabled.

## II. Legal Standard

In a childhood disability case such as this, the Court "reviews a decision by an ALJ 'to determine whether it is supported by substantial evidence on the record as a whole.'" *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003) (quoting *Bailey v. Apfel*, 230 F.3d 1063, 1065 (8th Cir. 2000), and 42 U.S.C. § 405(g)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007) (quoting *Stormo v. Barnhart*, 377 F.3d 801, 805 (8th Cir. 2004) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000))). The substantial evidence standard requires the Court to consider evidence that supports the Commissioner's findings as well as evidence that detracts from the decision. *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008). However, "[i]f substantial evidence supports the decision, [the Court] will not reverse, even if substantial evidence could have been marshaled in support of a different outcome." *England*, 490 F.3d at 1019.

## III. Discussion

In her motion for summary judgment, Ms. Manker argues that the ALJ erred in the functional-equivalence determination. Because it is uncontested that CEK experiences marked limitations in the health and physical well-being domain, Ms. Manker focuses primarily on the ALJ's decision to discount Dr. Schwartz's

finding of marked limitations in the "caring for yourself" domain.[6] [*See* Pl.'s Mem. at 3-16.] Therefore, "the pivotal issue [is] whether there is substantial evidence in the record to support the finding that [CEK's] impairments do not rise to the . . . functional level of severity necessary to equal a disability listed in Appendix 1 of 20 C.F.R. § 404, Subpart P." *See Gardner*, 230 F.3d at 855. For the reasons that follow, the Court affirms the ALJ's decision.

### A. Caring For Yourself

The "caring for yourself" domain requires consideration of how well CEK maintains his emotional and physical health, including the ability to fulfill wants and needs, as well as cope with stress and change, and caring for his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). This domain indicates that a preschool age child (3 to 6 years old) should "want to take care of many of [his] physical needs by [himself] (e.g., putting on your shoes, getting a snack), and also want to try doing some things that [he] cannot do fully (e.g., tying your shoes, climbing on a chair to get something up high, taking a bath)." *Id.* § 416.926a(k)(2)(iii). Evaluating the domain for such a child also contemplates that he will be more likely to follow instructions of a caregiver earlier in the age range than when he gets older and attains more independence. *Id.* A school-age child (6 to 12 years old) "should be independent in most day-to-day activites (e.g., dressing yourself, bathing yourself), although [he] may still need to be reminded sometimes to do these routinely." *Id.* § 416.926a(k)(2)(iv). Such children: begin to realize they are capable of doing some activities, but not others; identify when they feel good or bad about themselves;

---

[6] The parties do not dispute the ALJ's findings at step one or two of the sequential process. There is also no dispute regarding the ALJ's findings that CEK did not meet or medically any of the listings. Ms. Manker does not contend that the ALJ erred in finding that CEK has marked limitations in the "health and physical well-being" domain, and she does not argue that the ALJ should have found that CEK has extreme limitations in any of the six domains.

understand differences between right and wrong, including behaviorally; and demonstrate control over behaviors. *Id.*

>Examples of limitations in this domain include:
>
>>(i) You continue to place non-nutritive or inedible objects in your mouth.
>>
>>(ii) You often use self-soothing activities showing developmental regression (e.g., thumbsucking, re-chewing food), or you have restrictive or stereotyped mannerisms (e.g., body rocking, headbanging).
>>
>>(iii) You do not dress or bathe yourself appropriately for your age because you have an impairment(s) that affects this domain.
>>
>>(iv) You engage in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take your medication), or you ignore safety rules.
>>
>>(v) You do not spontaneously pursue enjoyable activities or interests.
>>
>>(vi) You have disturbance in eating or sleeping patterns.

20 C.F.R. § 416.926a(k)(3). These examples are not intended to demonstrate marked or extreme limitations in the "caring for yourself" domain. *Id.*

Discussing this domain, ALJ Ambuehl recognized that CEK has "some physical medical conditions requiring additional care and consideration such as asthma and inhalers, the need to avoid various allergens, and ongoing immune deficiency treatment." [AR 39.] She also noted that "[CEK] has also been identified at times as appearing pretty immature for his age despite having good academic functioning and appearing quite bright." [*Id.*] Yet the ALJ found that there was clear evidence that CEK did well in school "without significant issues or deficit in terms of his ability to care for himself in a reasonably appropriate manner." [*Id.*]

7

### B. Discounting Dr. Schwartz's Assessment

Focusing on the period from October 30, 2013 to December of 2014, Ms. Manker challenges the ALJ's conclusion that there was never a continuous 12-month period of marked limitations in the "caring for yourself" domain. She highlights Dr. Schwartz's August 4, 2014 assessment, which he prepared approximately ten months after the alleged onset date. As noted above, Dr. Schwartz found that CEK had marked limitations in the "caring for yourself" domain. Ms. Manker argues that the ALJ failed to provide a legitimate rationale for discounting Dr. Schwartz's opinion and asserts that there is no evidence from Oct. 30, 2013 through December of 2014 that contradicts his findings. [*See* Pl.'s Mem. at 11-16.]

An ALJ must consider all medical opinions in the record. 20 C.F.R. § 416.927(c). "State agency medical and psychological consultants and . . . other medical specialists are highly qualified" and serve as "experts in Social Security disability evaluation." *Id.* § 416.927(e)(2)(i). "Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants . . . and other medical specialists as opinion evidence," and "evaluate [their] findings using the relevant factors in paragraphs (a) through (d) of [§ 416.927]." *Id.* § 416.927(e)(2)(i), (ii). An ALJ is not bound by the findings of a State agency or other program physician, but is required to explain the weight given to the opinions in their decisions. SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). "[T]he opinions of nonexamining medical sources are generally given less weight than those of examining sources." *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010) (ellipsis omitted). "[B]ecause nonexamining sources have no examining or treating relationship . . ., the weight [the SSA] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 416.927(c)(3).

ALJ Ambuehl reviewed Dr. Schwartz's assessment and gave it little weight. She discounted his opinion because: (1) evidence provided after his August 4, 2014

8

assessment supported limitations in several domains where Dr. Schwartz found no limitations;[7] (2) Dr. Schwartz provided no particular rationale supporting his findings that CEK has marked limitations in caring for himself and health and physical well-being; and (3) the marked limitations conflicted with the overall evidence. Explaining the conflict with the overall evidence, the ALJ cited, as an example, the assessment from CEK's teacher indicating "no particular or significant limitation concerning [CEK's] ability to participate, engage, interact, and function at a reasonable age-appropriate manner from both a physical and mental standpoint the regular classroom setting . . . ." [AR 32.]

The Court finds substantial evidence on the record as a whole supports the decision to discount Dr. Schwartz's assessment.[8] In particular, the Court agrees that

---

[7] Though the ALJ generally found Dr. Schwartz's opinion was entitled to little weight because subsequent records showed some limitations in domains where he found none, the Court does not find this rationale to be a very meaningful basis on which to evaluate Dr. Schwartz's finding of marked limitations in the "caring for yourself" domain. The Court neither finds error in the ALJ's observations about other domains nor relies upon that rationale to affirm the ALJ's decision.

[8] The Commissioner states that the ALJ "correctly identified that Dr. Schwartz's opinion was internally inconsistent." [*See* Def.'s Mem. at 8 (citing AR 32).] However, the cited passage of the ALJ's decision does not point to internal inconsistency as a basis for discounting Dr. Schwartz's opinion. Plaintiff also incorrectly asserts that "there is absolutely nothing in the record that indicates that Dr. Schwartz intended to find anything *other* than marked limitations in the domains of ability to care for oneself and health and physical well-being." [Pl.'s Reply at 2-3, ECF No. 23 (emphasis in original).] Indeed, Dr. Schwartz's opinion contradicts itself twice. In addition to determining that CEK is "not disabled" despite finding marked impairments in two domains, Dr. Schwartz indicates, in one paragraph, that CEK "[d]oes not functionally equal a listing," and in the very next paragraph, he states that CEK does functionally equal a listing. [*See* AR 120-21 (making contradictory statements in prompts for discussion of CEK's functioning and "additional explanation").] Though the ALJ validly could have pointed to such contradictions as a basis for discounting the opinion, she did not. The Court need not resolve the parties' disagreement on this issue and finds the ALJ's decision to discount the opinion was valid regardless of

(*footnote continued on following page*)

Dr. Schwartz provided no particular rationale supporting his findings of marked limitations in the "caring for yourself" domain. Dr. Schwartz made a notation in his assessment form that states: "see pediatric claims communication for 8/4/14 for rationale for marked limitation in this domain due to physical impairment." [AR 120.] Elsewhere, his form lists CEK's medically determinable impairments, provides a "physical summary" of the updated medical evidence, and mentions functional limitations described in the medical evidence of record. [AR 118-19.] Dr. Schwartz also signed the form after an averment that he considered several factors in evaluating whether CEK's impairment or combination of impairments functionally equals the listings. [AR 121-23.]

However, Dr. Schwartz's assessment does not explicitly explain his reasoning for rating limitations in the "caring for yourself" domain as "marked." The closest his form comes are notations that CEK was "described" as needing help with personal hygiene, getting dressed, and bathing, and that he has difficulty eating due to allergies, esophagitis, and celiac disease. The Court is not persuaded, as Ms. Manker contends, that this undermines the ALJ's decision to discount his opinion. [*See* Pl.'s Mem. at 10-11 (citing AR 119).] These observations in Dr. Schwartz's assessment merely recount symptoms of CEK's impairments and issues in his home life, but they include no specific observations about the degree to which those issues interfere with CEK's age-appropriate capabilities. *See* 20 C.F.R. § 416.926a(k). In other words, Dr. Schwartz did not describe how the medical records he reviewed demonstrated a "marked" limitation in CEK's ability to care for himself. Dr. Schwartz did not point to any record showing CEK's combination of impairments "interferes seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). He merely noted that CEK needs help with some activities and has

---

(*footnote continued from previous page*)

which side has the better explanation for the obvious incoherence of the form in question.

10

difficulty eating. Dr. Schwartz also pointed to no records indicating that CEK places inedible objects in his mouth, exhibits developmental regression or stereotyped mannerisms, engaged in self-injurious behavior, or fails to pursue enjoyable activities. 20 C.F.R. § 416.926a(k)(3).

Substantial evidence also supports ALJ Ambuehl's observation that Dr. Schwartz's opinion was inconsistent with the overall evidence in the record, particularly from the period where Ms. Manker focuses her argument. For example, in December of 2013, shortly after the alleged onset date CEK was in no apparent distress at an asthma follow up consultation; his asthma was described as "mild persistent asthma" and was not deemed to be "high risk"; he was also "alert, interactive, [and] in no apparent distress." [AR 304.] Other records during this period reflect CEK's asthma was rated as "moderate," though persistent. [*See, e.g.*, AR 386-88, 395-403, 407.] In January of 2014, at the University of Minnesota's Pediatric Gastroenterology Clinic, Dr. Glenn Gourley noted that CEK's "celiac disease seem[ed] to be under control" since his last visit, and suggested that his bowel issues could be explained by the fact he was drinking much more than he was eating.[9] [AR 316.] Although Ms. Manker reported in early 2014 that CEK emitted an abnormal body odor [AR 314], no contemporaneous medical record confirmed this issue and subsequent records indicate "nobody else has ever mentioned that her son

---

[9] Ms. Manker argues that the ALJ's assessment of the evidence from the fifteen-month period following the alleged onset date is flawed because the ALJ referred to Dr. Glenn Gourley's opinion as being from March of 2014 even though it is undated. [Pl.'s Mem. at 15-16.] Dr. Gourley, had treated CEK at the gastroenterology clinic, and at some point completed a child function questionnaire concerning the six domains relevant to childhood disability cases. [AR 667-68.] He found no limitation in any domain, except for health and physical well-being. [AR 668.] There is no date on Dr. Gourley's completed questionnaire, so it is unclear why the table of contents in the record identifies it as having been dated March 27, 2014. Even if the questionnaire were issued later, this does not weaken the ALJ's decision to discount Dr. Schwartz's assessment or the ALJ's finding of less than marked limitations in the "caring for yourself" domain.

has an unusual smell" [AR 567; *see also* AR 580-81]. In April 2014, Ms. Manker reported that CEK had been doing pretty well but she had noticed some snoring, so he was referred for a sleep study. [AR 323-25.] The result was a "minimally abnormal and reassuring sleep study." [AR 493-95.] At a September 29, 2014 visit where CEK's physical exam was normal, Ms. Manker reported that he did well over the summer months and "ha[d] not had school absences, [though Ms. Manker was] quite stressed about school truancy due to his predisposition for respiratory illnesses[.]" [AR 461-68] On October 20, 2014, at a pediatric pulmonary follow up appointment, Ms. Manker again reported that CEK had done well since a visit during the summer, though he did have two respiratory infections in September. [AR 470-74.] Given these supporting medical records, the ALJ's decision to discount Dr. Schwartz's assessment of marked limitations in the "caring for yourself" domain was "within the available zone of choice." *See Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (providing that the court will not disturb the denial of benefits when "the ALJ's decision falls within the available zone of choice").

Further, the ALJ did not err when she relied on CEK's teacher's assessment of CEK's functioning to discount Dr. Schwartz's assessment. CEK started kindergarten in the fall of 2014. His teacher, Trisha Richardson, completed a Teacher Questionnaire on May 22, 2015, based on her interactions with CEK over the previous nine months.[10] [AR 265-72.] Ms. Richardson was provided a form asking for

---

[10] Ms. Manker appears to suggest that the ALJ could not have relied on this assessment to make any conclusions about CEK's functioning between October 30, 2013, through October 30, 2014, because the questionnaire was completed in May of 2015. [*See* Pl.'s Mem. at 13 (emphasizing the date of the teacher's assessment in the context of an alleged error concerning a closed period of benefits).] However, there is nothing in the form itself or in Ms. Richardson's completion of it to indicate that she was limiting her assessment of CEK's functioning to observations that post-date October 30, 2014. Nor is there any reason to think that her observations would not be relevant to understanding what CEK's functional capabilities were during the months immediately preceding his first days in kindergarten. CEK's impairments are not the sort amenable to a sudden and abrupt improvement, particularly with regard

(*footnote continued on following page*)

her input on the following criteria relating to CEK's functioning in the "caring for yourself" domain:

> (1) handling frustration appropriately;
> (2) being patient when necessary;
> (3) taking care of personal hygiene;
> (4) caring for physical needs;
> (5) cooperating in, or being responsible for, taking needed medications;
> (6) using good judgment regarding personal safety and dangerous circumstances;
> (7) identifying and appropriately asserting emotional needs;
> (8) responding appropriately to changes in mood;
> (9) using appropriate coping skills to meet daily demands of school environment; and
> (10) knowing when to ask for help.

[AR 270.] Ms. Richardson indicated that there were "[no] problems observed in this domain; functioning appears age-appropriate." [AR 270.] There was no error in the ALJ's reliance on this assessment of CEK's functioning or concluding that it was inconsistent with a finding that he was markedly limited in the ability to care for himself in an age-appropriate way.

Ms. Manker also suggests that the ALJ should have contacted Dr. Schwartz again to obtain clarification or another opinion. [Pl.'s Mem. at 15.] However, nothing in the record indicates that the ALJ lacked an evidentiary basis for determining the merits of CEK's claim. *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004) ("The ALJ is required to recontact medical sources and may order consultative evaluations only if the available evidence does not provide an adequate basis for determining the merits of the disability claim."). Because the record here contained evidence "which provided ample basis upon which the ALJ could make an informed determination of

---

(*footnote continued from previous page*)
to the things addressed in Ms. Richardson's questionnaire such as the ability to follow instructions, take care of himself, and being patient.

the merits of [CEK's] disability claim," *id.*, the ALJ committed no error in deciding not to re-contact Dr. Schwartz.

For all these reasons, the Court finds that substantial evidence supports the ALJ's finding that CEK has less than marked limitation in the "caring for yourself" domain between the alleged onset date of October 30, 2013 and December of 2014. The ALJ's decision to discount Dr. Schwartz's opinion to the contrary was not erroneous.

### C.   Closed Period of Benefits

Ms. Manker argues that the record requires remand, at the very least, for the Commissioner to consider whether CEK is entitled to a closed period of benefits. The Commissioner may award social security benefits either on a continuing basis or for a "closed period," if a condition was disabling at one time and later ceased to be disabling. *Harris v. Sec'y of Dep't of Health & Human Servs.*, 959 F.2d 723, 724 (8th Cir. 1992). To qualify for a closed period of benefits the disabling condition must last for at least twelve months. *Karlix v. Barnhart*, 457 F.3d 742, 747 (8th Cir. 2006).

The Court disagrees with Ms. Manker's argument that remand for consideration of this issue is required. As discussed above, the evidence from October 30, 2013 through October 30, 2014 does not undermine the ALJ's conclusion that there was never a continuous twelve-month period when CEK had more severe impairments than those identified in the six functional domains. Particularly with respect to the "caring for yourself" domain, substantial evidence supports the ALJ's determination that CEK's functional limitations were less than marked. Accordingly, remand is not required for a closed period of disability.

### D.   Other Substantial Evidence

Ms. Manker rejects the Commissioner's characterization that she has limited her request for judicial review in this case to the question of a closed period of disability. [Pl.'s Reply at 1 n.1.] However, reading through Ms. Manker's briefing, it is

14

unclear whether she assigns any error to the ALJ's evaluation of evidence from any other period in the record. Indeed, she states that "Plaintiff does not necessarily dispute the ALJ's acknowledgement that the child's overall condition has waxed and waned throughout the adjudicated period." [Pl.'s Mem. at 6.] Because Ms. Manker makes no specific assertion of error based on evidence from January of 2015 or later, the Court will not engage in an exhaustive discussion of the record. However, the Court notes that its independent review of the entire record suggests that substantial evidence supports the ALJ's thorough and well-reasoned decision.

### IV. Order

Based on the foregoing, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion for Summary Judgment [ECF No. 18] is **DENIED**;
2. Defendant's Motion for Summary Judgment [ECF No. 21] is **GRANTED**; and
3. This matter is **DISMISSED WITH PREJUDICE**.

Date: March 26, 2018         *s/Katherine Menendez*
                             Katherine Menendez
                             United States Magistrate Judge